UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID J. SNODGRASS, D.D.S. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-0107 |
| ) | Judge Echols |
| DORAL DENTAL OF TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is the Motion to Dismiss Amended Complaint (Docket Entry No. 14) filed by Defendant Doral Dental of Tennessee ("Doral Dental"). That Motion has been fully briefed by the parties.

### I. FACTUAL BACKGROUND

The Amended Complaint contains the following allegations. Plaintiff, David J. Snodgrass, D.D.S. ("Dr. Snodgrass"), is a dentist who has been practicing in Tennessee since 1984. He has been a board-certified specialist in pediatric dentistry since 1986. Dr. Snodgrass is a participant in the Medicaid program and, until 2003, participated in the TennCare program.

Dr. Snodgrass is also a professor in the Department of Dentistry at Vanderbilt University. His writings have been published in the dental field, both nationally and internationally, and he is frequently invited to speak on topics involving dentistry.

Defendant Doral Dental of Tennessee, LLC ("Doral Dental"), a Wisconsin corporation, is a subsidiary of Doral Dental USA, LLC ("Doral Dental USA"). Doral Dental USA is a government dental plan administrator which administers dental programs in Tennessee, Virginia, Illinois, and

1

Idaho. In 2002, Doral Dental became responsible for administering the TennCare dental program, having previously served as the administrator of the TennCare dental program for BlueCross BlueShield Association of Tennessee.

Since 1998, Dr. Snodgrass has been a vocal opponent of the administration of the TennCare dental program. That year, he initiated a letter writing campaign, in which numerous other dentists joined, which publicized the allegedly unfair contracting processes and unfair reimbursement rates of Doral Dental. Dr. Snodgrass and others allegedly discovered that Doral Dental had negotiated contracts with certain dental providers which fully reimbursed the providers for their fees, but which paid other dental providers from a risk pool. Those paid from the risk pool received a much lower percentage of their fees.

In 2000 and 2001, Dr. Snodgrass met with Doral Dental representatives and contacted members of the TennCare Oversight Committee to voice his displeasure with the reimbursement rates. During this period, he also enlisted the assistance of colleagues in both the dental and medical fields in communicating to both TennCare and members of the Tennessee General Assembly about the deterioration of the dental provider network because of the low reimbursement rates for dental care.

In August 2001, Dr. Snodgrass wrote Katy Lamb of TennCare, endorsing a "carve-out" of the dental program from the overall TennCare program. In his letter, Dr. Snodgrass expressed vehement opposition to Doral Dental serving as administrator of the dental program for TennCare.

In 2002, Doral Dental accused Dr. Snodgrass of billing for services not provided and for the improper utilization of stainless steel crowns. After peer review by the Nashville Dental Society,

Dr. Snodgrass was found to have accurately billed for services provided and properly utilized stainless steel crowns.

The utilization of stainless steel crowns was an ongoing dispute between Dr. Snodgrass and Doral Dental. Doral Dental voiced the opinion that stainless steel crowns were not medically necessary. In response, Dr. Snodgrass presented research which supported the position that, while stainless steel crowns were more expensive, the crowns lasted longer and had a lower replacement rate than amalgam crowns.

On June 13, 2003, Dr. Snodgrass wrote Governor Phil Bredesen and Manny Martins of TennCare, expressing concern about the management of the TennCare dental program by Doral Dental. Governor Bredesen responded by indicating he would forward Dr. Snodgrass's concerns to the Director of TennCare and noted that since Dr. Snodgrass' Provider Services agreement was negotiated between Dr. Snodgrass and Doral Dental, Dr. Snodgrass should bring his concerns to the attention of Doral Dental.

On July 9, 2003, Doral Dental notified Dr. Snodgrass by letter that his provider services agreement was being terminated. No basis for the termination was provided in the letter. Dr. Snodgrass made numerous attempts to find out the reason for the termination by Doral Dental, but was never provided a basis for the termination decision.

The termination decision affected not only Dr. Snodgrass, but also the associate dentists and orthodontists in his office. At the time, there were six such associates in his office and each applied for credentialing with Doral Dental after the termination but were denied credentialing while associated with Dr. Snodgrass' practice. One dentist, Dr. Richard Gentzler, subsequently left

3

Plaintiff's practice and opened his own practice. He sought credentialing from Doral Dental after opening his own practice and was approved as a TennCare dental provider.

After the termination of the provider agreement, many of Dr. Snodgrass' patients contacted Governor Bredesen's office, as well as the office of Dr. James Gilchrist, TennCare's dental director to voice their displeasure with the decision. The termination decision was also aired by the local media, including Nashville's Channel 4 television station.

On February 19, 2007, Dr. Snodgrass submitted an application to Doral Dental for credentialing as a dental provider under the TennCare program. On February 27, 2007, Doral Dental notified Dr. Snodgrass that it would not accept or process his application because his previous provider agreement was terminated in 2003. No other basis was given for Doral Dental's refusal to accept or process Dr. Snodgrass' application.

Based upon these events, Dr. Snodgrass filed suit in this Court pursuant to 42 U.S.C. § 1983 on February 1, 2008. Dr. Snodgrass alleges that he was deprived of clearly established rights and privileges guaranteed by the Fourteenth Amendment to the United States Constitution and that such deprivation occurred without due process of law. He also claims that Doral Dental retaliated against him for being a vocal critic and that his criticism was protected speech under the First Amendment.

## II. STANDARD OF REVIEW

In considering a Motion to Dismiss, the Court is to construe the Amended Complaint in the light most favorable to the Plaintiff, accept the Amended Complaint's allegations as true, and draw all reasonable inferences in favor of the Plaintiff. DirecTv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). Nevertheless, in order to survive a Motion to Dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the Amended

4

Complaint must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). That is, the Amended Complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Id. at 1974. In making the evaluation, the Court is limited to the Amended Complaint and exhibits attached thereto. Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001).

### III. APPLICATION OF LAW

Doral Dental moves to dismiss on the grounds that Plaintiff cannot establish a Section 1983 claim because Doral Dental is a private company which contracts with the State of Tennessee and is not a "state actor" for purposes of Section 1983. Doral Dental also argues that if it is deemed a "state actor," this action must be dismissed because it was acting "equivalent to a state agency" (TennCare) which is entitled to sovereign immunity under the Eleventh Amendment. Doral Dental further asserts that Plaintiff's claims are barred by the statute of limitations. Finally, Defendant argues that Plaintiff cannot state a claim for relief under either the First Amendment or the Fourteenth Amendment.

### A. Section 1983 and State Action

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Obviously, Doral Dental is not a Tennessee state agency and its employees are not Tennessee employees. Nevertheless, "the deed of an ostensibly private organization or individual" may at times demand to be treated "as if a State has caused it to be performed." Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). Specifically, "state action may

5

be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Id. (quoting, Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)).

For a private actor-defendant's acts to be considered state action, "its actions [must] so approximate state action that they may be fairly attributed to the state." Lansing v. City of Memphis, 202 F.3d 821, 828 (6th Cir. 2000). "'The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test.'" Boykin v. Van Buren Township, 479 F.3d 444, 451 (6th Cir. 2007) (quoting Chapman v. Higbee Co., 319 F.3d 825, 833 (6th Cir. 2003)). In this case, Plaintiff asserts that Doral Dental should be deemed a state actor either under the public function test or the symbiotic relationship or nexus test.[1]

Under the public function test, "a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." Chapman, 319 F.3d at 833. This test has been interpreted very narrowly, and has been utilized to find state action on the part of a private actor only in rare circumstances. Id. at 833-34. Examples of state action under this public-function test "are few," "illustrate its lack of expansive utilization by the courts," and include such things as elections, eminent domain and a company-owned town. Id. Generally, there must be some historical basis which shows that the action is one traditionally within the exclusive prerogative of

---

[1]The state compulsion test is clearly inapplicable to the facts alleged in this case because that test "requires that the state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" Wilcher v. City of Akron, 498 F.3d 516, 519 (6th Cir. 2007).

6

the state, and the burden is on Plaintiff to make this showing. Brown ex rel. Thomas v. Fletcher, 2008 WL 113986 at *4 (E.D. Ky. 2008)(collecting cases).

Plaintiff has cited no cases which lead to the conclusion that the actions performed by Doral Dental meet the public function test, nor has he set forth any historical evidence which would lead to the conclusion that Doral Dental engaged in the narrow type of activity recognized under that test. Based on the record, the Court cannot find that administering a medical program and determining proper providers and claims is a function traditionally and exclusively reserved to the states.

As an alternative, Plaintiff claims that Doral Dental's actions meet the symbiotic relationship or nexus test. Under that test, "a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." Chapman, 319 F.3d at 834. "The Supreme Court has cautioned that there is no 'readily applicable formula' for finding such a close nexus; divining such a close relationship can only be accomplished 'in the framework of the peculiar facts or circumstances present.'" Wilcher, 498 F.3d at 520 (quoting, Burton v. Wilmington Parking Auth., 365 U.S. 715, 726, (1961)). While the question of state action is generally resolvable as a matter of law, there are occasions where unanswered questions may present issues of fact "regarding the proper characterizations of the actions for the jury to decide." Chapman, 319 F.3d at 834.

"The nexus can be established with evidence of a customary or preexisting arrangement between the government and the private actor." Durante v. Fairlane Town Center, 201 Fed. Appx. 338, 344 (6th Cir. 2006). The sufficiently close relationship between the state and the private actor

7

required by the nexus test may also be established through state regulation or contract. Ellison v. Garbarino, 48 F.3d 192, 195 (6th Cir. 1995).

When the record is construed in Plaintiff's favor, the Court cannot conclude, as a matter of law, that there is an insufficient nexus between the State and Doral Dental such that the actions of Doral Dental in this case cannot be fairly attributed to the state. Fairly read, the record shows that Defendant contracted with the State of Tennessee to administer and manage the entire TennCare dental program which is a program established and governed by the Medical Assistance Act. T.C.A. § 71-5-101, *et seq.* The contract designates Defendant as Administrator of the dental program under TennCare, with authority and responsibility over such things as staffing requirements, access and availability to care, provider network requirements, member services requirements, utilization management, care coordination, network development and management, claim processing, appeals, quality of care, and provider payment, all of which were things previously performed by the State of Tennessee. The detailed specificity of the contract suggests that the parties intended that the administration of the dental program by Doral Dental would mirror the manner in which it had been administered by the state prior to Doral Dental becoming the administrator. Given the record, it simply cannot be said that there are insufficient allegations to support a nexus or a symbiotic relationship between Doral Dental and the State of Tennessee. Accordingly, the Amended Complaint will not be dismissed on the grounds that there was no state action as required by Section 1983.

**B. Eleventh Amendment Immunity**

Defendant argues that even if there was state action, this case should be dismissed because it is entitled to Eleventh Amendment immunity. That is, even though Doral Dental is a private

entity, it should be entitled to the same immunity which the State of Tennessee would otherwise be entitled because it provides government services under its contract on behalf of the State of Tennessee, and therefore should be treated as the equivalent of a state agency.

The Ninth Circuit has recently canvassed the law relating to Eleventh Amendment immunity and observed that "[a]ll but the Eleventh Circuit have denied state sovereign immunity to private entities, more or less categorically." Del Campo v. Kennedy, 517 F.3d 1070, 1079 (9th Cir. 2008).[2] For its part, the Sixth Circuit has indicated that a court should utilize a multi-factor test in determining the issue of a private entity's immunity which "consists of: (1) the state's obligation to pay any judgment that would accrue against the entity; (2) how the state's statutes and courts have referred to the entity and the degree of control the state has over the entity; (3) whether state or local officials appoint the entity's board members; and (4) whether the entity's functions are akin to traditional state or local functions." Perry v. Southeastern Boll Weevil Eradication Foundation, 154 Fed. Appx. 467, 472 (6th Cir. 2005). The first factor is the most important, and "[t]he entity claiming Eleventh Amendment immunity bears the burden to prove such." Id.

In this case, Doral Dental has not shown its entitlement to immunity. From the record before the Court, it cannot be said that the State would be obligated to pay any judgment which may be entered against Doral Dental,nor has Doral Dental shown that its board members have been appointed by the State. Similarly, the degree of control that the State may have over Doral Dental is not made entirely clear by the record.

---

[2]The Eleventh Circuit decision referenced by the court in Del Campo was Shands Teaching Hosp. v. Beech Street Corp., 208 F.3d 1308, 1311 (11th Cir. 2000) and utilized an analysis which the Del Campo court did not find persuasive. Del Campo, 517 F.3d at 1080. Regardless, the decision in Shands was tempered by the subsequent decision of the Eleventh Circuit in Rosario v. Americana Corrective Consult. Serv., 506 F.3d 1038, 1047 (11th Cir. 2007).

9

Moreover, the contract between the State and Doral Dental provides that Doral Dental is not the State's employee or agent. Specifically, the contract between the parties contains the following language:

> Independent Contractor. The parties hereto, in the performance of this Contract, shall not act as employees, partners, joint ventures, or associates of one another. It is expressly acknowledged by the parties hereto that such parties are independent contracting entities and that nothing in this Contract shall be construed to create an employer/employee relationship or to allow either to exercise control or direction over the manner or method by which the other transacts its business affairs or provides its usual services. The employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purpose whatsoever.

(Docket Entry No. 11-6, Section D.12). In the following paragraph, the contract provides that "[t]he state shall have no liability except as specifically provided in this contract." (Id., Section D.13).

This Court's conclusion that Doral Dental is not entitled to dismissal is supported by the decision in Del Campo. There, ACCS, a private corporation, contracted with the District Attorney's office in Santa Clara County, California to run a bad check diversion program. The relationship between ACCS and the District Attorney's office was described as follows:

> Under that contract, ACCS is entitled to collect a $100 class fee, 60% of all administrative fees, and various additional fees and late charges. In exchange for these fees, ACCS runs nearly every aspect of the bad check program. It provides "daily management of all clerical and accounting functions," including sending "demand notices to suspected bad check writers, collection and disbursement of victim restitution and administrative revenue and all financial reporting." It provides staff to contact county businesses about the program, runs financial education courses for bad check writers, and maintains all program files. The DA provides "intake criteria"-a two-page checklist-designating the checks that are appropriate for the program. The contract imposes no obligation upon the DA initially to decide which overdrawn checks should be referred to the program because they appear to indicate that a crime has been committed, requiring only that the DA "review all cases transferred by ACCS [to the DA] for failure to comply" with its program.

10

Id. at 1072. The contract between the parties also made clear that ACCS was an independent contractor and that nothing in the contract was to be construed as creating the relationship of employer or employee, or principal and agent. Id. ACCS aggressively pursued those who passed bad checks and was ultimately sued by a class of individuals for violation of 42 U.S.C. § 1983. ACCS argued that it was entitled to immunity, but the Ninth Circuit rejected the argument stating that even if the District Attorney acted in a state capacity in contracting the bad check program, ACCS would not be entitled to state sovereign immunity. See also, Rosario, 506 F.3d at 1044-145 (considering similar contract between ACCS and the state of Florida and rejecting ACCS's argument that it was entitled to immunity because it was merely the administrator of a bad check program).

Likewise in this case, Doral Dental contracted with the State to perform certain functions which the State would otherwise have performed. The relationship between the parties was governed by an agreement which indicated that Doral Dental was an independent entity and not an employee of the State or its agent. Further, there is no evidence that the State would be liable for a judgment were one to be entered against Doral Dental. As such, the Court finds that Doral Dental is not entitled to Eleventh Amendment immunity.

In its reply brief, Doral Dental argues that it is "irreconcilably inconsistent" for Plaintiff to argue that Doral Dental is a state actor, but then argue that Doral Dental is not entitled to Eleventh Amendment immunity. The Court does not understand how this is anymore incongruous than Doral Dental arguing that it was not a state actor, but alternatively arguing that if it is considered to be a state actor under the law it is entitled to Eleventh Amendment immunity. Regardless, the state

11

action requirement and Eleventh Amendment immunity are analytically separate. As the court in Del Campo observed:

> To be clear: Although we hold that private entities cannot be arms of the state, we emphatically do not hold that they cannot act under color of state law for the purposes of 42 U.S.C. § 1983 and similar statutes. The two concepts are distinct. Compare <u>Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (counties and similar municipal corporations are not arms of the state for sovereign immunity purposes) with <u>Monell v. Dep't. of Social Serv. of the City of N.Y.</u>, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (local governments may be sued under § 1983 in some circumstances).

<u>Del Campo</u>, 517 F.3d at 1081; <u>see</u>, <u>Benson v. Trustees of Indiana Univ.</u>, 2002 WL 31242606 at *3 (S.D. Ind. 2002)("[i]t is not necessary for a Defendant to be a state actor in order for there to be state action as required for § 1983").

**C. Statute of Limitations**

Defendant also seeks dismissal on statute of limitations grounds because Plaintiff was terminated as a dental service provider in 2003, but his initial Complaint was not filed until 2007. Alternatively, Defendant argues because Plaintiff did not file suit until 2007, he can only complain about Doral Dental's denial of his application in February 2007.

The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. <u>Kuhnle Bros., Inc. v. County of Geauga</u>, 103 F.3d 516, 519 (6th Cir. 1997). In Tennessee, the one-year limitation period of T.C.A. § 28-3-104(a)(3) applies to Section 1983 claims.

While Section 1983 actions must generally be filed within one year of when the plaintiff knows or has reason to know of his injuries from a defendant's unlawful act, that limitations period may be extended where there is a continuing violation of federal law. To determine whether a continuing violation exists, a court considers whether (1) the defendant's wrongful conduct

12

"[c]ontinues after the precipitating event that began the pattern"; (2) the injury to plaintiff "continue[s] to accrue after that event"; and (3) further injury to the plaintiff was "avoidable if the defendants had at any time ceased their wrongful conduct." Tolbert v. State of Ohio Dep't of Transp., 172 F.3d 934, 940 (6th Cir.1999). In short, "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Id.

In this case, when the Amended Complaint is construed in Plaintiff's favor, Plaintiff has alleged facts sufficient to make out a continuing violation. Plaintiff alleges he expressed repeated complaints of favoritism, inequality of service, and unfairness in reimbursements under Doral Dental's handling of TennCare's dental program, and he solicited others to assist in remedying the problems. Thereafter, Plaintiff claims in 2002 he was falsely accused of billing for services not provided and the improper use of dental devices. Nevertheless, Plaintiff states he continued to voice his concerns and complaints and, in retaliation for that criticism, Doral Dental terminated Plaintiff's dental provider services agreement, along with the dental agreements of his associate dentists on July 29, 2003. Thereafter, the associates applied for credentialing but were denied credentialing as long as they were associated with Plaintiff's dental practice. After one of the associate dentists left Plaintiff's practice and established an independent practice, he reapplied for credentialing under the TennCare dental program and was approved by Doral Dental. In February 2007, Plaintiff asserts he again submitted an application for credentialing by Defendant, but his application was not accepted nor was it processed because his provider agreement had previously been terminated. Taking such allegations as true, they suggest retaliation and/or wrongful conduct after Plaintiff's initial termination. Such conduct continued to injure the Plaintiff, and the damages could have

13

been avoided or mitigated had Doral Dental decided to reinstate Plaintiff into the provider network.

Therefore, the Court will not dismiss this action on statute of limitations grounds.[3]

D. **Constitutional Claims**

Defendant also seeks dismissal of Plaintiff's Amended Complaint on the substantive ground that it fails to state a claim upon which relief may be granted. After setting forth the alleged facts, Plaintiff makes the following claims:

> **COUNT I: FEDERAL CONSTITUTIONAL VIOLATIONS**
> 33. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 32 as if fully set forth herein.
> 34. Defendant Doral Dental, through its unlawful and unethical conduct, deprived Plaintiff of clearly established rights and privileges as guaranteed under the United States Constitution, in violation of 42 U.S.C. § 1983.
> 35. Defendant Doral Dental's actions and conduct constitute retaliation against Dr. Snodgrass for his criticism of the manner in which Doral Dental has administered the dental program under TennCare, such criticism by Plaintiff is speech protected by the First Amendment to the United States Constitution.
> 36. Defendant Doral Dental's actions unlawfully prevent Dr. Snodgrass from doing business with the State of Tennessee to provide dental care to its underserved and underprivileged constituents. The actions of Defendant Doral Dental deprived Plaintiff of the right and privilege to provide services on behalf of the State of Tennessee without due process of law.
> 37. Defendant Doral Dental's actions in prohibiting the inclusion of Dr. Snodgrass – a highly qualified pediatric dentist – in its provider network, deprive TennCare's youngest and most vulnerable enrollees of access to care from an individual who has proven time and again that he places the best interests of the State's children first.
> 38. Defendant Doral Dental's acts, singly and in combination, constitute deliberate indifference to the federally protected rights of Plaintiff and said acts were clearly committed with malice.

(Amended Complaint, ¶¶ 33-38). Based on these allegations, Defendant argues that Plaintiff's due process claim fails because he has no property right in being accorded provider status, and that his

---

[3]The Court is only ruling on the propriety of dismissal of the actions on statute of limitations grounds and expresses no opinion as to whether Dr. Snodgrass would be entitled to recover damages for past discrete acts.

14

First Amendment retaliation claim fails because he has not alleged sufficient facts to show that his speech involved a matter of public concern or that he had an ongoing relationship with Doral Dental.

**1. Due Process Claim**

As indicated, Defendant moves to dismiss Plaintiff's due process claim on the grounds that Plaintiff had no property right in being accorded provider status and cites for support the Sixth Circuit's decision in Lattimer v. Robinson, 2005 WL 1513103 (6th Cir. 2005) and the Second Circuit's decision in Necula v. Conroy, 13 Fed. Appx. 24 (2nd Cir. 2001). Plaintiff has not responded to that argument.

In Lattimer, the Sixth Circuit held that "[a] license to perform dental services, however, does not translate into an entitlement to receive a particular business opportunity from the TennCare program (*i.e.* reimbursement for orthodontic services)." Lattimer, 2005 WL 1513103 at *1. Instead, such dentist can still practice dentistry to the extent permitted by their license, but "simply are no longer reimbursed by the State of Tennessee when they perform certain orthodontic services on TennCare enrollees." Id. Moreover, "[b]ecause Plaintiffs have no property or liberty interests in continuing to be reimbursed for providing orthodontic services to TennCare enrollees, their substantive due process claim necessarily fails." Id. at *3.

Similarly, in Necula, the Second Circuit held that a state Medicaid provider-physician "'has no property right to continued enrollment as a qualified provider." Necula, 13 Fed. Appx. at 26. Because there was no such property right, the physician could not claim that he suffered a deprivation of property without due process of law when his application for reinstatement was rejected.

15

Likewise in this case, Plaintiff has no property right in being a TennCare provider. As such, his due process claim fails.

### 2. First Amendment Claim

Plaintiff claims he was retaliated against when he spoke out about Doral Dental's practices and administration of the TennCare program. Defendant asserts Plaintiff needs to show that his speech addressed matters of public concern and that he had an ongoing relationship with the Defendant in order to prevail on his First Amendment retaliation claim.

In Bd. of Comm's v. Umbehr, 418 U.S. 668 (1996), the Supreme Court noted that "[t]he First Amendment . . . protects government employees from termination because of their speech on matters of public concern" and held that the same analysis applied to independent government contracts since they were "similar in most relevant respects to government employees[.]" Id. at 676 & 684. In light of Umbehr, Defendant argues Plaintiff's speech did not raise matters of public concern but instead only raised matters that may have been of concern to dentists. That is, concerns about the use of stainless steel versus amalgam crowns, or the use of direct reimbursement or reimbursement from a pool are of concern to dentists, but not the public at large.

Assuming for the sake of Defendant's argument that the government contractor analysis even applies in light of the fact that Plaintiff is not a public employee and Doral Dental is not a government agency, dismissal is not warranted because Defendant reads Plaintiff's allegations too narrowly. When the Complaint and attached documents are read in a light favorable to Plaintiff, Plaintiff was not merely complaining about the vagaries or arbitrariness in reimbursement or about the medical correctness of using stainless steel rather than amalgam crowns. Instead, the concerns he expressed could also be viewed as expressing dismay about how public funds were being utilized

16

and about the quality of dental care given to financially disadvantaged children in Tennessee. Such things are matters of public concern. See, Rodgers v. Banks, 344 F.3d 587, 601 (quality of state-funded medical care raises a matter of public concern); Rodin v. City of Coral Springs, 299 Fed. Appx. 849, 853 (11th Cir. 2007)(complaints about how public funds are allocated raise matters of public concern); Greer v. Amesqua, 212 F.3d 358, 371 (7th Cir. 2000)(exposing wrongdoing in relation to how public funds are spent raises matter of public concern). Thus, Plaintiff's First Amendment claim will not be dismissed based on Defendant's assertion that Plaintiff's speech did not involve a matter of public concern.

Defendant also seeks dismissal of Plaintiff's First Amendment claim on the grounds that Plaintiff cannot show a continuing relationship with Doral Dental. In doing so, Defendant recognizes that the Supreme Court in Umbehr dealt solely with the termination of a pre-existing relationship and chose not to "address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship." Umbehr, 518 U.S. at 685. Defendant also recognizes that the Sixth Circuit has not addressed the question left open in Umbehr, but asks the Court to follow the Third Circuit's decision in McClintock v. Eichelberger, 169 F.3d 812 (3d Cir. 1999) which refused to allow a First Amendment retaliation claim by a prospective government contractor.

The decision in McClintock has not met with universal approval. Indeed, in McClintock, Circuit Judge Roth wrote a vigorous dissent in which she stated that "the Supreme Court's First Amendment jurisprudence does not support the kind of status-based limitation on individual's rights of political expression and association that the majority's decision endorses" and that the majority relied upon *dicta* in Umbehr which did not take into account numerous cases which indicated "that

17

independent contractors should be treated the same as employees of the government for purposes of First Amendment analysis." Id. at 818-820. Subsequently, in Oscar Renda Contracting, Inc. v. City of Lubbock, 463 F.3d 378, 386 (5th Cir. 2006), a divided panel of the Fifth Circuit agreed with Judge Roth's analysis and concluded that Umbehr "would not require a contractor to have a prior relationship with a governmental agency before being able to assert a First Amendment claim[.]"

Other courts have recognized McClintock, but found it to be distinguishable. In Mangieri v. DCH Healthcare Auth., 304 F.3d 1072, 1076 (11th Cir. 2002), the Eleventh Circuit distinguished McClintock on the grounds that the contractor in McClintock had no "*ongoing* commercial relationship with the government" but instead was "a disappointed bidder or applicant for a new governmental contract[.]" Because of that distinction, the Eleventh Circuit in Mangieri concluded that Umbehr did not bar the claim of an anesthesiologist who sued under section 1983 alleging that the non-renewal of his contract with a state hospital was in retaliation for his speaking out about matters of public concern. In doing so, the Eleventh Circuit observed that prior to non-renewal, the anesthesiologist had provided service for several years, and that its decision might have been different if the contract upon which the anesthesiologist had bid had been for the provision of services other than anesthesia services. Similarly, the district court in Housing Works, Inc. v. Turner, 179 F.Supp.2d 177, 196-97 (S.D.N.Y. 2001), declined to follow McClintock where the record suggested that the contractor had a continuing relationship with the governmental agency until its contracts were either rejected or not renewed.

The decision in McClintock is not binding, nor particularly persuasive given Judge Roth's dissent and the Fifth Circuit's opinion in Oscar Renda. Yet, even if the Court were inclined to follow the basic holding in McClintock, and again assuming that the government contractor analysis

18

even applies, dismissal would not be warranted. The contractor in McClintock held two discrete contracts with the government, one in 1985 and another in 1992, both of which were completed in the same year the contracts began. The contractor subsequently was in a vendor-vendee relationship when it bid on, but was rejected for, an unrelated contract. Here, to the contrary, Plaintiff had an ongoing relationship with TennCare and then Doral Dental, and was seeking to continue that exact same relationship. Specifically, Plaintiff alleges that he has provided dental care through the TennCare program since the start of his dental practice in 1984, and has had a relationship with Doral Dental since at least 1998. Because Plaintiff had an ongoing relationship with the TennCare program, he cannot be characterized as a disappointed bidder on a new contract. Accordingly, Plaintiff's First Amendment retaliation claim will not be dismissed even though Plaintiff had been terminated from the TennCare program.

## IV. CONCLUSION

On the basis of the foregoing, Defendant Doral Dental's Motion to Dismiss Amended Complaint (Docket Entry No. 14) will be granted in part and denied in part. The Motion will be granted solely with respect to Plaintiff's claim that he was deprived of due process in violation of the Fourteenth Amendment, but in all other respects the Motion will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE